FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2026 OCT 22 P 4: 12
CLERK
SO. DIST. OF GA.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

ADRIANE POTTER and GEORGE FARIS,

Plaintiffs,

v.

ARK HOMES FOR RENT ET-2 LP; AMBER KRAYENHAGEN, individually and in her official capacity; SENTRY MANAGEMENT INC.; MATT MATTINGLY, individually and in his official capacity as CEO/CFO/Secretary; COLONIES AT HABERSHAM HOA INC.; MYRON TONGE, individually and in his official capacity as property manager; MALETTE HAWES; and BOBBY HAWES,

Defendants.

Civil Action No. 4:26-cv-00165

**JURY TRIAL DEMANDED**

# SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

## INTRODUCTION

Plaintiff Adriane Potter brings this civil rights action against her landlord, property manager, homeowners association, HOA management company, and neighbors for a coordinated pattern of First Amendment retaliation, selective and pretextual enforcement, coercion, and unlawful interference with federally protected rights. This amended complaint incorporates post-notice retaliatory conduct occurring on June 9, 2026 — the morning Plaintiff's civil rights representative formally notified Defendants of this pending federal action — and further incorporates newly discovered evidence that the HOA's enforcement authority rests on void covenant amendments executed without proper authority.

## PARTIES

1. Plaintiff ADRIANE POTTER is an individual residing at 29 Wilkins Road, Midway, Georgia 31320, Liberty County, in the Southern District of Georgia. Plaintiff is the leaseholder of record and has continuously occupied the premises for approximately five (5) years.

2. Co-Plaintiff GEORGE FARIS is an individual who has continuously resided at 29 Wilkins Road, Midway, Georgia 31320, for five (5) years. Mr. Faris is a direct victim of Defendants' retaliatory occupancy threat transmitted on June 9, 2026, and brings this action as a co-plaintiff asserting his own rights under 42 U.S.C. § 3617 and applicable law.

3. Defendant ARK HOMES FOR RENT ET-2 LP is a limited partnership doing business in Georgia as a residential landlord. ARK owns and manages the property at 29 Wilkins Road, Midway, Georgia 31320.

4. Defendant AMBER KRAYENHAGEN is an officer or principal of ARK Homes for Rent and is sued individually and in her official capacity.

5. Defendant SENTRY MANAGEMENT INC. is a Georgia corporation retained by Colonies at Habersham HOA Inc. to provide HOA management services.

6. Defendant MATT MATTINGLY simultaneously holds the positions of CEO, CFO, and Secretary of Sentry Management Inc., in potential violation of O.C.G.A. § 14-3-840, and is sued individually and in his official capacity.

7. Defendant COLONIES AT HABERSHAM HOA INC. is the homeowners association governing the Colonies at Habersham subdivision, Liberty County, Georgia.

8. Defendant MALETTE HAWES is a neighbor residing in the Colonies at Habersham subdivision who has publicly admitted to filing HOA complaints against Plaintiff and has made defamatory statements about Plaintiff on social media.

8a. Defendant MYRON TONGE is an adult individual who, at all relevant times, served as property manager for Defendant ARK Homes for Rent ET-2 LP and acted as ARK's agent in issuing enforcement notices, threats of entry, and retaliatory demands against Plaintiffs, including the June 2026 shed-removal ultimatum and the June 3, 2026

cease-and-desist escalation. He is sued in his individual and official capacities.

9. Defendant BOBBY HAWES is a natural person who resides with Defendant Malette Hawes. Neither Defendant Malette Hawes nor Defendant Bobby Hawes is a member of the HOA's board of directors; however, Defendant Bobby Hawes was personally asked by Matt Mattingly — the principal of declarant HCLM, LLC and signatory of the purported 2026 Amended and Restated Declaration (Exhibit L) — to serve on the HOA board. Mr. Hawes related this invitation to Plaintiff Faris personally, before the events giving rise to this action began. This pre-existing invitation evidences a personal relationship and coordination between the Hawes household and Mattingly that predates the enforcement campaign against Plaintiffs. Defendant Bobby Hawes's property is exempt or grandfathered from HOA governance. Defendant Bobby Hawes acts on the HOA's behalf in matters affecting the property and Plaintiffs.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, the Fair Housing Act (42 U.S.C. §§ 3601 et seq.), 4 U.S.C. § 5, and the Fair Credit Reporting Act (15 U.S.C. §§ 1681 et seq.).

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in the Southern District of Georgia, Savannah Division, pursuant to 28 U.S.C. § 1391, as the property at issue and all events giving rise to this action are located in Liberty County, Georgia.

## STATEMENT OF FACTS

### A. Background

13. Plaintiff has resided at 29 Wilkins Road, Midway, Georgia 31320 as a paying tenant under a written lease with ARK Homes for Rent for approximately five (5) years. The written lease agreement is preserved as Exhibit H, and the rental application documenting the approval process is preserved as Exhibit H.1.

14. On August 30, 2023, Plaintiff installed a flagpole on the property displaying American flags and political flags, including advocacy materials related to the Jimmy's Law campaign, a federal legislative initiative.

15. For a period of approximately two and a half (2.5) years — from August 2023 through March 2026 — Defendants took no enforcement action regarding the flagpole, political flags, or any related items on Plaintiff's property.

16. On February 18, 2025, Plaintiff paid the $330.00 fee for, and on February 19, 2025 executed the application for, Liberty County Accessory Permit #250078, approved for a 12x20 storage structure at 29 Wilkins Road (Exhibit A). This permit was obtained at ARK's demand and with ARK's knowledge.

**B. The Retaliatory Enforcement Campaign**

17. On March 17, 2026, Defendants Sentry Management and Colonies at Habersham HOA issued a "Friendly Warning and First Notice" targeting Plaintiff's political sign and flag displays, unapproved flagpole, shed, garden structure, and a trailer visible from the roadway — all items that had been present and unenforced for years. The notice identified no motorcycle.

18. On April 2, 2026, Plaintiff formally notified ARK Homes for Rent of her rights under 4 U.S.C. § 5 (federal flag protection statutes), and on May 28, 2026, sent a written demand to ARK's property manager and legal coordinator demanding retraction of the enforcement actions. ARK did not respond and instead escalated enforcement — including a 24-hour compliance ultimatum with threats of eviction, and, on May 28, 2026, the addition of a wholly new "inoperable motorcycle(s)" violation that the HOA's own March 17 notice had never cited — adding a sixth violation only after Plaintiff asserted federally protected rights.

19. Defendant Myron Tonge, ARK's property manager, issued a written threat to remove Plaintiff's permitted shed — Accessory Permit #250078 — without a court order, constituting threatened unlawful entry and property deprivation. In a May 28, 2026 email, Tonge demanded confirmation that the shed would be removed by the HOA's June 22, 2026 deadline and threatened that ARK would otherwise 'proceed with scheduling a contractor to complete the removal on your behalf' (Exhibit M). ARK's violations coordinator, Amanda Hundley, likewise wrote that the shed 'is denied and needs to be removed immediately' and that 'the CC&Rs are clear that these are not allowed without written HOA permission' — a proposition contradicted by the original recorded covenants (Exhibit J) — while Tonge stated that ARK was 'required to comply' with the HOA's 'guidelines and enforcement timelines,' establishing ARK's coordination with the HOA enforcement campaign against Plaintiff's county-permitted structure.

20. ARK's reversal — first demanding Plaintiff obtain a permit for the shed, then threatening to remove the permitted structure — constitutes bad faith and demonstrates the enforcement campaign is pretextual rather than compliance-based. The reversal was executed in writing: on May 28, 2026, ARK's violations coordinator cited "Sec. 8-35 — Building Without a Permit" against the shed; within hours, Plaintiff George Faris replied attaching the very permit ARK had demanded in January 2025 — Accessory Permit #250078, approved and $330.00 paid to Liberty County on February 18, 2025 — and demanded that ARK acknowledge the permit and cease enforcement. ARK never retracted the false citation (Exhibit M).

21. Defendant Malette Hawes publicly admitted on Facebook to filing HOA complaints against Plaintiff and visiting the HOA office, and stated in a March 27, 2026 comment that "That renter property shouldn't be used as a billboard" — directly tying her to the sign and billboard enforcement against Plaintiffs' rented property (Exhibit E). Hawes's own property is not under HOA — as she herself admitted in an October 10, 2024 post ("We are the only house

in the front that is not under HOA") (Exhibit E.3) — establishing selective enforcement.

21a. Defendant Hawes also admitted in a March 20, 2025 post that she maintains three cameras on the side of her house facing Plaintiffs' residence and reviewed three weeks of camera footage of Plaintiffs' home and shed (Exhibit E.2) — continuous surveillance of Plaintiffs' property by the same neighbor whose complaints drove the enforcement campaign against the permitted shed and signs.

**C. Post-Notice Retaliatory Conduct — June 9, 2026**

22. On June 3, 2026, Mr. Faris sent ARK a formal written cease-and-desist letter (Exhibit O) demanding that ARK and Sentry Management immediately cease all enforcement actions and eviction threats targeting the resident of 29 Wilkins Road, stating that the enforcement campaign was 'unlawful, retaliatory, and in direct violation of federally protected rights,' citing Accessory Permit #250078, and warning that any further action after receipt would be treated as willful. Within seventy-two (72) minutes, Defendant Tonge responded by escalating: he set a new removal deadline of June 8, 2026 and threatened that ARK would 'arrange for a vendor to remove the unit' with the cost 'charged back' to Plaintiff. Mr. Faris replied in writing the same day that the conduct was 'selective, retaliatory, and unlawful' and that all evidence was preserved in a master case file. Six days later — on June 9, 2026 — Mr. Faris, Civil Rights Investigator and Founder of Enoch Engine, formally notified ARK Homes for Rent of the pending federal matter in this Court.

23. On the same morning — June 9, 2026, at approximately 8:39 AM — Defendant Myron Tonge transmitted a text message to Mr. Faris stating: "Thank you for your message. Unfortunately, if you are unable to complete the application process, you cannot be approved as an authorized occupant of the home and therefore would not be permitted to reside there. All occupants are required to complete our screening process as part of the approval requirements — Myron." Mr. Faris responded in writing that same day: "Any attempt to impose occupancy fees or application requirements at this time is noted. I have resided at this property for five

years with full knowledge and acceptance by ARK Homes for Rent. Any new financial demands or occupancy conditions initiated following our notification of pending federal proceedings will be treated as retaliatory conduct and added to the existing record in Potter v. ARK Homes for Rent. Govern yourselves accordingly" (Exhibit P).

24. Mr. Faris has continuously resided at 29 Wilkins Road for five (5) years with ARK's full knowledge. During this period, ARK accepted rent without invoking any occupant approval requirement. Indeed, on May 5–6, 2026 — five weeks before the June 9 threat — ARK itself initiated the process of adding Mr. Faris to the lease: Defendant Tonge emailed Plaintiff a link for ARK's "roommate add-on" process, stating that "our team can begin adding your husband to the lease," imposed no screening application on Mr. Faris, and loaded an add-on charge onto Plaintiff's ledger (Exhibit N). ARK never completed the add-on it had initiated — the link ARK supplied malfunctioned as a transfer request — and no refund of the charge has been made. Mr. Faris's information was submitted through ARK's own process on May 6, 2026, and Defendant Tonge confirmed in writing that same morning: "I have loaded the charge on your ledger."

25. ARK's invocation of an occupant approval provision — triggered within hours of formal federal notice, after five years of knowing acquiescence and five weeks after ARK itself had begun adding Mr. Faris to the lease through its own fee-charging roommate add-on process (Exhibit N) — is a pretextual and retaliatory act designed to intimidate Plaintiff's civil rights representative and interfere with the exercise of Plaintiff's federally protected rights.

26. This text message is preserved as documentary evidence and is submitted as Exhibit F.

**D. HOA Governance Misconduct and Retroactive Rule-Changing**

27. Defendant Matt Mattingly simultaneously holds the titles of CEO, CFO, and Secretary of Sentry Management Inc. Under O.C.G.A. § 14-3-840, certain officer positions within a nonprofit corporation carry distinct duties and authority. Mattingly's consolidation of

these roles raises questions of fiduciary conflict and governance integrity in HOA enforcement decisions affecting Plaintiff.

28. On or about May 2026, a Colonies at Habersham resident, Debbie, confirmed via Facebook messages that the HOA amended its governance rules — including provisions regarding flags, trailers, and RV parking — AFTER Defendants had already initiated enforcement against Plaintiff for violations of those same provisions. This confirmation, preserved as Exhibit I, establishes that Defendants retroactively altered the governing documents to paper over enforcement they had already begun, constituting bad-faith rulemaking and further supporting Plaintiff's estoppel and selective enforcement claims.

**E. Defamation by Neighbor Hawes**

29. Defendant Malette Hawes publicly characterized Plaintiff's property as maintained by a "junky/hoarder" and an "attention seeker" on social media, made false statements of fact about Plaintiff's household, and attempted to use the HOA as an instrument to remove Plaintiff from her home. The "junky/hoarder" statements are preserved in Exhibit E.

**F. Void Covenant Authority — The 2012, 2013, and 2026 Covenant Chain**

30. The original 2012 Restrictive Covenants for Colonies at Habersham were recorded on March 13, 2013, in Deed Book 01765, pages 724-730, Liberty County, Georgia (Exhibit J). The original covenants contain NO prohibition on flags or flagpoles, NO prohibition on trailers or RV parking, and NO fine schedule. Paragraph 24 of the original covenants provides that amendments require the majority of lot owners to execute and record such amendments.

31. On December 9, 2013, a First Amendment to the Restrictive Covenants was recorded in Deed Book 01804, page 694 (Exhibit K). This amendment was signed by all three declarants — HCLM, DPM Ventures, and Circle M Construction — establishing the precedent that amendments to the covenants require the signature and agreement of all declarants.

32. On or about August 13, 2026, an Amended and Restated Declaration was recorded, signed by Matt Mattingly alone (Exhibit L). This document purports to impose restrictions on

flags, trailers, and other items that were never restricted under the original covenants. However, because the 2013 amendment required the signature of all declarants, Mattingly's unilateral execution of the 2026 Restated Declaration is void ab initio for lack of authority. No single declarant or officer may unilaterally amend the covenants.

33. The enforcement actions taken against Plaintiff — including the March 17, 2026 "Friendly Warning" and all subsequent enforcement — are based on provisions that either did not exist in the original covenants or were enacted through a void amendment lacking proper authority. Defendants enforced provisions against Plaintiff that they had no legal power to create or enforce.

34. The timeline reveals the full pattern: Defendants began enforcing provisions against Plaintiff that did not exist in the original covenants (Exhibit J), then retroactively attempted to create those provisions through a void amendment (Exhibit L), while a resident confirmed the rules were changed after enforcement began (Exhibit I). This constitutes bad-faith rulemaking, retroactive enforcement, and fraud on the homeowners.

**G. Tenancy Documentation and Rent History**

35. Plaintiff's written lease agreement with ARK Homes for Rent is preserved as Exhibit H, documenting the terms of tenancy including the occupant approval provision that ARK is now invoking retroactively after five years of non-enforcement.

36. The rental application submitted at the commencement of tenancy is preserved as Exhibit H.1, documenting the original approval process and the parties' understanding at the time of lease execution.

37. Plaintiff's five-year rent payment history, preserved as Exhibit G (bank and payment records), establishes ARK's knowing and continuous acceptance of rent with full knowledge of Mr. Faris's residence at the property, further supporting Plaintiff's implied waiver claim. ARK has represented that it does not maintain rent payment records for the tenancy; Plaintiff will additionally seek production of ARK's internal rent, payment, and

accounting records through discovery, including under Rule 34, Fed. R. Civ. P.

## CAUSES OF ACTION

### COUNT I — FIRST AMENDMENT RETALIATION

*42 U.S.C. § 1983*

38. Plaintiff incorporates all preceding paragraphs by reference.

39. Plaintiff engaged in protected First Amendment activity by displaying political flags, advocacy materials for the Jimmy's Law campaign, and a petition poster on her residential property.

40. Defendants took no enforcement action for two and a half years, then issued a retaliatory enforcement notice in March 2026, timed to Plaintiff's increased advocacy activity and assertion of federal rights.

41. On June 9, 2026, within hours of formal notification of this federal action, Defendant Tonge transmitted a threat targeting Plaintiff's civil rights representative — a direct adverse action causally connected to Plaintiff's assertion of First Amendment rights.

41a. Plaintiff Faris's May 2025 Facebook post (Exhibit E.1) is protected speech. It documented ARK's year-long refusal to repair an occupied rental home directly across from Plaintiff's residence — tenants living without air conditioning or heat, with black mold present — until they abandoned the home. The comments of Defendant Hawes on that post, preserved as part of Exhibit E.1, evidence open hostility toward renters in the Colonies at Habersham — including her statement that the community is 'not a POOR area for the ones that are paying a MORTGAGE,' her retort 'Who cares; this is my house, can you say that,' and her admission that she is herself a landlord — and, together with her March 2026 statements about Plaintiffs' property (Exhibit E), establish her animus toward renter households and a motive for her participation in the enforcement campaign against Plaintiffs' tenancy.

42. The temporal proximity between Plaintiff's legal notices and Defendants' enforcement escalations establishes a causal nexus sufficient to support a retaliation claim

under 42 U.S.C. § 1983.

43. Plaintiff has suffered and continues to suffer irreparable harm, including threatened loss of housing, interference with political expression, and ongoing intimidation.

### COUNT II — SELECTIVE ENFORCEMENT

42 U.S.C. § 1983; Equal Protection Clause, U.S. Const. Amend. XIV

44. Plaintiff incorporates all preceding paragraphs by reference.

45. Defendant Hawes's property is grandfathered and exempt from the covenant provisions invoked against Plaintiff. Defendants enforced covenant provisions against Plaintiff while exempting a similarly situated neighbor whose property is maintained by the same HOA framework.

46. This selective enforcement is without rational basis and was motivated by Plaintiff's protected speech and advocacy activities, in violation of the Equal Protection Clause and 42 U.S.C. § 1983.

### COUNT III — LANDLORD RETALIATION

*O.C.G.A. § 44-7-2(b)*

47. Plaintiff incorporates all preceding paragraphs by reference.

48. Plaintiff engaged in protected tenant activity by asserting her rights under federal law and the terms of her lease.

49. ARK Homes for Rent responded with escalating enforcement threats, eviction warnings, and — on June 9, 2026 — a retaliatory occupancy threat directed at Plaintiff's civil rights representative.

50. This constitutes landlord retaliation under O.C.G.A. § 44-7-2(b), which prohibits adverse action against tenants for asserting their legal rights.

### COUNT IV — BAD FAITH PERMIT REVERSAL

*Breach of Implied Covenant of Good Faith and Fair Dealing*

51. Plaintiff incorporates all preceding paragraphs by reference.

52. ARK Homes for Rent demanded Plaintiff obtain a county permit for her storage shed in January 2025. Plaintiff complied, obtaining Accessory Permit #250078 at a cost of $330.00.

53. ARK subsequently threatened to remove the permitted structure without a court order, reversing its own demand in bad faith and in violation of the implied covenant of good faith and fair dealing.

**COUNT V — UNLAWFUL THREATENED ENTRY**

*O.C.G.A. § 44-7-150 et seq.*

54. Plaintiff incorporates all preceding paragraphs by reference.

55. Defendant Myron Tonge's written threat to remove Plaintiff's permitted shed without a court order — reiterated in his May 28, 2026 email threatening contractor removal of the permitted structure (Exhibit M), and again on June 3, 2026, when, within seventy-two (72) minutes of receiving Mr. Faris's formal cease-and-desist letter, he threatened vendor removal with the cost charged back to Plaintiff (Exhibit O) — constitutes a threatened unlawful entry and conversion of personal property in violation of Georgia landlord-tenant law.

56. Georgia law requires court authorization prior to any landlord entry for purposes of removing tenant property. Tonge's written threat circumventing this requirement exposes ARK and Tonge to liability.

**COUNT VI — HOA GOVERNANCE MISCONDUCT**

*O.C.G.A. § 14-3-840*

57. Plaintiff incorporates all preceding paragraphs by reference.

58. Defendant Mattingly's simultaneous service as CEO, CFO, and Secretary of Sentry Management Inc. raises governance integrity concerns under O.C.G.A. § 14-3-840 and relevant nonprofit corporate governance standards.

59. Enforcement decisions affecting Plaintiff's housing were made or authorized through this structurally compromised governance arrangement, tainting the legitimacy of the enforcement process.

**COUNT VII — DEFAMATION**

*O.C.G.A. § 51-5-1 et seq.*

60. Plaintiff incorporates all preceding paragraphs by reference.

61. Defendant Hawes publicly made false statements of fact about Plaintiff on social media, including characterizing Plaintiff as a "junky/hoarder" and an "attention seeker" (Exhibit E), and made statements implying criminal or antisocial behavior by members of Plaintiff's household.

62. These statements were made to third parties, were false, and caused damage to Plaintiff's reputation and emotional wellbeing, constituting defamation per se under Georgia law.

**COUNT VIII — TORTIOUS INTERFERENCE**

*Georgia Common Law*

63. Plaintiff incorporates all preceding paragraphs by reference.

64. Defendant Hawes, by filing bad faith HOA complaints and making false public statements, intentionally and improperly interfered with Plaintiff's contractual relationship with ARK Homes for Rent, proximately causing the enforcement campaign, eviction threats, and resulting damages.

**COUNT IX — COERCION AND INTIMIDATION**

*Fair Housing Act, 42 U.S.C. § 3617*

65. Plaintiff incorporates all preceding paragraphs by reference.

66. 42 U.S.C. § 3617 prohibits any person from coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of having exercised

or enjoyed, any right granted or protected by the Fair Housing Act.

67. Plaintiff has exercised her rights under the Fair Housing Act by asserting First Amendment retaliation and discriminatory enforcement claims arising from HOA covenant enforcement.

68. George Faris, Civil Rights Investigator, has aided and encouraged Plaintiff in the exercise of her Fair Housing rights within the meaning of § 3617, and his presence at the property is directly connected to Plaintiff's assertion of those rights.

69. On June 9, 2026, within hours of formal federal notice, Defendant Tonge threatened to remove Mr. Faris from the property where he has lawfully resided for five (5) years — constituting coercion and intimidation directed at both Plaintiff and her civil rights representative.

70. This conduct was intentional, deliberate, and transmitted in writing by ARK's authorized agent, establishing willful violation of § 3617. That ARK escalated its removal threats within seventy-two (72) minutes of receiving Mr. Faris's formal cease-and-desist letter — and issued the occupancy threat against Mr. Faris six days later — confirms that each act was taken with knowledge of its unlawful character.

71. As a direct and proximate result, Plaintiff and her representative have suffered irreparable harm, emotional distress, and interference with the lawful exercise of their civil rights.

**COUNT X — PRETEXTUAL ENFORCEMENT AND IMPLIED WAIVER**

*O.C.G.A. § 44-7-2; Georgia Contract Law*

72. Plaintiff incorporates all preceding paragraphs by reference.

73. Under Georgia law, a party may waive a contractual provision through a consistent course of conduct demonstrating abandonment of that provision.

74. Plaintiff's lease contains a provision requiring approval of occupants remaining at the property for more than two days.

75. ARK Homes for Rent, with actual and continuing knowledge of George Faris's residence at 29 Wilkins Road, accepted rent for five (5) consecutive years without invoking, enforcing, or referencing the occupant approval provision. ARK further initiated its own "roommate add-on" process to add Mr. Faris to the lease on May 5–6, 2026, charging a fee for the add-on without demanding any screening application from Mr. Faris (Exhibit N).

76. ARK's five-year course of conduct constitutes an implied waiver of the occupant approval requirement as applied to Mr. Faris as a matter of Georgia law.

77. ARK's sudden invocation of the occupant approval provision on June 9, 2026 — the morning of formal federal notice — is a pretextual enforcement action activated to retaliate against Plaintiff for asserting her federal rights, not to enforce a legitimate lease term in good faith.

78. Pretextual enforcement of a waived contractual provision, timed to coincide with the exercise of federally protected rights, constitutes landlord retaliation under O.C.G.A. § 44-7-2(b) and provides additional evidence of retaliatory intent under the Fair Housing Act.

**COUNT XI — ESTOPPEL AND VOID COVENANT ENFORCEMENT**

*Georgia Contract Law; O.C.G.A. § 44-5-6; Equity*

79. Plaintiff incorporates all preceding paragraphs by reference.

80. The original 2012 Restrictive Covenants (Exhibit J) contain no prohibition on flags, flagpoles, trailers, or RV parking. The covenants provide in Paragraph 24 that amendments require the majority of lot owners to execute and record such amendments.

81. The 2013 First Amendment to the covenants (Exhibit K) was signed by all three declarants — HCLM, DPM Ventures, and Circle M Construction — establishing that amendments require the agreement of all declarants, not unilateral action by a single officer.

82. The August 13, 2026 Amended and Restated Declaration (Exhibit L) was signed by Matt Mattingly alone, without the signature or agreement of the other declarants or the majority of lot owners. This document is void ab initio for lack of authority and has no legal

force or effect.

83. Defendants enforced provisions against Plaintiff that did not exist in the original covenants and were enacted through a void amendment. Defendants are estopped from enforcing provisions they had no legal authority to create, particularly where they initiated enforcement BEFORE purporting to create the provisions through a void amendment.

84. Furthermore, resident Debbie confirmed via Facebook (Exhibit I) that the HOA amended its governance rules AFTER already enforcing them against Plaintiff, establishing retroactive bad-faith rulemaking. Defendants cannot retroactively create rules to justify enforcement they have already begun.

85. Defendants' enforcement of void or nonexistent covenant provisions against Plaintiff, while exempting similarly situated neighbors, constitutes a breach of fiduciary duty, fraud on the homeowners, and a denial of due process. Plaintiff is entitled to declaratory relief that the 2026 Restated Declaration is void and that all enforcement actions taken pursuant to it are without legal authority.

**COUNT XII — OCCUPANT SCREENING DEMAND IN VIOLATION OF THE FAIR CREDIT REPORTING ACT**

15 U.S.C. §§ 1681b(b)(2), 1681m; 42 U.S.C. § 3617

86. Plaintiff incorporates all preceding paragraphs by reference.

87. On June 9, 2026, Defendant Tonge demanded that George Faris — a five-year resident of the premises with ARK's actual and continuing knowledge — "complete the application process" and ARK's "screening process," and stated that Mr. Faris "cannot be approved as an authorized occupant" and "would not be permitted to reside" at the property absent such approval (Exhibit F).

88. ARK conducts its rental application and occupant screening through the Yardi RentCafe platform, which obtains consumer reports — including credit and criminal-background screening — for use in determining eligibility for residency. The rental

application documenting this process is preserved as Exhibit H.1.

89. The Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2), requires that before a consumer report may be procured for residential leasing purposes, the landlord must provide the applicant a clear and conspicuous disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for tenancy purposes, and must obtain the applicant's written authorization. No such standalone disclosure or written authorization was ever provided to or obtained from Mr. Faris.

90. The RentCafe screening process invoked by Defendant Tonge embeds screening consent within bundled click-through terms and conditions rather than a standalone disclosure — a structure inconsistent with § 1681b(b)(2). Further, on August 12, 2026, the United States Department of Justice announced that a federal court had entered a stipulated order requiring RentGrow, Inc. — upon information and belief, the Yardi Systems affiliate that furnishes tenant-screening reports used on Yardi's residential platform — to pay a $2.25 million civil penalty to resolve allegations, referred by the Federal Trade Commission, that it violated the Fair Credit Reporting Act in connection with its tenant-screening reports, including by failing to maintain reasonable procedures to assure accuracy and failing to follow required procedures for consumer disputes.

91. Mr. Faris refused to submit to the screening demand. Defendant Tonge nonetheless declared in writing that Mr. Faris "cannot be approved" — without any disclosure, authorization, or adverse action notice complying with 15 U.S.C. §§ 1681b(b)(2) and 1681m(a), (b). The demand, issued within hours of formal notice of this federal action, was not a legitimate eligibility process but a coercive instrument: ARK's own documented process for adding Mr. Faris to the lease, initiated May 5–6, 2026, was a fee-charging roommate add-on requiring no screening application at all (Exhibit N). Mr. Faris was made to choose between surrendering his consumer-report information to the party retaliating against his household and forfeiting occupancy of his residence of five years.

92. In the alternative, and upon information and belief, ARK or its screening vendors obtained or reviewed consumer-report information concerning Mr. Faris in connection with the June 9, 2026 determination; if so, ARK failed to provide the disclosure, authorization, and adverse action notice required by 15 U.S.C. §§ 1681b(b)(2) and 1681m(a), (b).

93. The June 9, 2026 screening demand — structured without Fair Credit Reporting Act safeguards and timed to the assertion of federally protected rights — constitutes coercion and intimidation within the meaning of 42 U.S.C. § 3617 and establishes willful violations of the Fair Credit Reporting Act, entitling Plaintiffs to statutory and punitive damages and attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Adriane Potter respectfully requests that this Court:

1. Grant preliminary and permanent injunctive relief as follows:

(a) Enjoin Defendants from taking any action to enforce the March 17, 2026 violation notice pending resolution of this matter;

(b) Enjoin Defendants from taking any adverse action against George Faris's occupancy at 29 Wilkins Road;

(c) Enjoin Defendants from removing, threatening to remove, or interfering with Plaintiff's permitted shed (Accessory Permit #250078);

(d) Enjoin any eviction, lease termination, or other adverse housing action against Plaintiff;

(e) Order Defendants to preserve all communications, records, and documents related to enforcement actions against Plaintiff;

2. Declare that Defendants' enforcement actions violate the First Amendment, the Fair Housing Act, and applicable Georgia law;

3. Declare that ARK has waived the occupant approval provision of the lease as to George Faris through five years of knowing acquiescence;

4. Declare that the August 13, 2026 Amended and Restated Declaration (Exhibit L) is void ab initio for lack of authority and that all enforcement actions taken pursuant to it are without legal force or effect;

5. Declare that Defendants' June 9, 2026 occupancy threat constitutes unlawful coercion under 42 U.S.C. § 3617;

6. Award compensatory damages in an amount to be proven at trial;

7. Award punitive damages for willful violation of 42 U.S.C. § 3617 and deliberate First Amendment retaliation;

8. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 3613(c)(2);

9. Declare that the June 9, 2026 occupant screening demand violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(b)(2) and 1681m;

10. Award statutory damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681o(a)(1)(A), and punitive damages for willful violations under 15 U.S.C. § 1681n(b), together with attorney's fees and costs under 15 U.S.C. §§ 1681n(c)(2) and 1681o(a)(2);

11. Award such other and further relief as this Court deems just and proper.

**EXHIBIT LIST**

**Exhibit A:** Liberty County Accessory Permit #250078 for a 12x20 storage building at 29 Wilkins Road, Colonies at Habersham — fee paid February 18, 2025, application signed February 19, 2025

**Exhibit B:** HOA "Friendly Warning and First Notice," dated March 17, 2026

**Exhibit C:** Plaintiff's federal rights notice to ARK, dated April 2, 2026

**Exhibit D:** Written threat by Myron Tonge to remove permitted shed without court order

**Exhibit E:** Facebook thread (March 27, 2026), Colonies at Habersham community group — Plaintiff Faris's post regarding First Amendment flag and sign citations and ARK retaliation; comments of Defendant Malette Hawes, including that 'some of the neighbors are JUNKY and HOARDERS,' 'STAND WITH HOA!,' and 'That renter property shouldn't be used as a billboard' — tying her to the sign-violation enforcement — together with community-group moderator Debbie Moye Samra's confirmation that

the Freedom to Display the American Flag Act of 2005 prohibits an HOA from barring the American flag

**Exhibit E.1:** Plaintiff George Faris's May 2025 Facebook post documenting ARK Homes for Rent's year-long failure to repair an occupied rental across from Plaintiff's residence — no air conditioning or heat, black mold present — culminating in the tenants' abandonment of the home, together with the comments of Malette Hawes responding thereto — comments in which Defendant Hawes voices hostility toward renters in the community — including that the neighborhood is 'not a POOR area for the ones that are paying a MORTGAGE,' and 'Who cares; this is my house, can you say that,' and her admission that she is a landlord — evidencing her animus toward renter households and a motive for her participation in the enforcement campaign against Plaintiffs' tenancy

**Exhibit E.2:** Facebook thread, Colonies at Habersham community group (March 20, 2025) — Defendant Malette Hawes's written admission that she maintains three cameras on the side of her house facing Plaintiffs' residence and reviewed three weeks of footage of Plaintiffs' house and shed

**Exhibit E.3:** Facebook thread, Colonies at Habersham community group (October 10, 2024) — Defendant Malette Hawes's written admission that her own house is not under HOA, her description of the HOA's actual scope, and her stated motive for joining: 'to help keep our neighborhood clean for the value of our property'

**Exhibit F:** Text message from Myron Tonge to George Faris, June 9, 2026, 8:39 AM — post-notice retaliatory occupancy threat

**Exhibit G:** Plaintiff's bank and payment records reflecting five years of rent payments to ARK Homes for Rent — to be supplemented through discovery of ARK's internal rent and accounting records

**Exhibit H:** Written lease agreement between Adriane Potter and ARK Homes for Rent

**Exhibit H.1:** Rental application documenting original tenant approval process

**Exhibit I:** Facebook messages from resident Debbie confirming HOA amended governance rules (flags, trailers, RV parking) AFTER enforcing them against Plaintiff

**Exhibit J:** Original 2012 Restrictive Covenants (Deed Book 01765, pp. 724-730, filed March 13, 2013) — no flag prohibition, no RV prohibition, no fine schedule; Paragraph 24 amendment clause requiring majority of lot owners

**Exhibit K:** First Amendment to Restrictive Covenants (December 9, 2013, Deed Book 01804, p. 694) — signed by all three declarants (HCLM, DPM Ventures, Circle M Construction)

**Exhibit L:** August 13, 2026 Amended and Restated Declaration, signed by Matt Mattingly alone — void ab initio for lack of authority

**Exhibit M:** Email chain of May 20–28, 2026 among ARK Violations Coordinator Amanda Hundley, ARK Property Manager Myron Tonge, and Plaintiff — documenting the HOA's denial of shed approval, the June 22, 2026 removal deadline, and Tonge's threatened contractor removal of Plaintiff's county-permitted shed without court order

**Exhibit N:** Email chain of May 5–6, 2026 between ARK Property Manager Myron Tonge and Plaintiff — documenting ARK's initiation of its own 'roommate add-on' process to add Mr. Faris to the lease, Tonge's statement that ARK's team would 'begin adding your husband to the lease,' and the add-on charge loaded to Plaintiff's ledger

**Exhibit O:** Email chain of June 3, 2026 — Mr. Faris's formal cease-and-desist letter to ARK and Sentry Management, Defendant Tonge's response within seventy-two (72) minutes setting a June 8 removal deadline and threatening vendor removal with costs charged back to Plaintiff, and Mr. Faris's same-day written reply

**Exhibit P:** Text message from Mr. Faris to Defendant Tonge, June 9, 2026 — Mr. Faris's written response to Tonge's occupancy threat, stating that any occupancy fees or application requirements imposed after notification of the pending federal proceedings would be treated as retaliatory conduct and added to the record in Potter v. ARK Homes for Rent

**Exhibit Q:** Mr. Faris's letter to Defendant Tonge regarding Colonies at Habersham HOA Inc.'s compliance with O.C.G.A. § 44-3-232.1 — including the demand that ARK verify whether the March 17, 2026 enforcement action was authorized by a formal HOA board vote and provide documentation within fourteen (14) days, and the warning that further enforcement actions, occupancy demands, or adverse communications would be treated as additional retaliatory conduct added to the federal record

**VERIFICATION**

We, Adriane Potter and George Faris, declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge, information, and belief.

______________________________

Adriane Potter

______________________________

George Faris

**Date: October 22, 2026**